Richard C. BECHERER, Lawrence Milton Richard, Robert A. Horvath and Shirley L. Horvath, and Henry V. Denolf and Joann L. Denolf, individually, and on Behalf of all others similarly situated, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Can–American Corporation, Can–American Realty Corporation, Shelter Seagate Corporation, Garrett G. Carlson, Graham C. Lount, Arni Thorsteinson, Frank Lavin, Martin Cicco, Laventhol & Horwath, Dominion Financial & Investment Corp., n/k/a Trustbank Mortgage Center, Inc., M.A. Mortenson Company, Winsor/Faricy Architects, Inc., and Midwest Title Guarantee Company of Florida, Defendants.

No. 89–CV–72502.

United States District Court,
E.D. Michigan, S.D.

Nov. 24, 1992.

Amended Order and Injunction
Dec. 17, 1992.

1260

Thomas R. Grady, Grady & Associates, Naples, FL, Bruce E. Gerstein, Garwin, Bronzaft, Gerstein & Fisher, New York City, Eugene A. Spector, Spector & Roseman, P.C., Philadelphia, PA, and Elwood S. Simon, Elwood S. Simon & Associates, Bloomfield Hills, MI, for plaintiffs.

Steve Gaskins, Cosgrove, Flynn, Gaskins & Haskell, Mary Yeager, Faegre & Benson, Sam Kaplan, Kaplan, Strangis & Kaplan, Minneapolis, MN, and Jon B. Gandelot, Gandelot & Dickson, P.C., Detriot, MI, for SSG.

Thomas G. McNeill, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, MI, for Mortenson.

Jonathan T. Walton, Jr., Clark, Klein & Beaumont, Detroit, MI, for Trustbank.

Douglas G. Graham, Butzel Long, P.C., Detroit, MI, for Merrill Lynch.

Melissa Horne, Kerr, Russell and Weber, Detroit, MI, for Winsor/Faricy.

Frank W. Brochert, Plunkett & Cooney, Detroit, MI, for Midwest Title.

Mark T. Boonstra, Miller, Canfield, Paddock & Stone, Detroit, MI and Howard O. Godnick, Schulte Roth & Zabel, New York City, for Registry Hotel Corp.

Susan LaCava, Madison, WI, for Assoc. of Unit Owners.

Carl H. von Ende, Miller, Canfield, Paddock & Stone, Detroit, MI, for defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

This Opinion holds that a group of 298 investors who purchased unit interests in a 474–room resort hotel ("The Registry Hotel") in Naples, Florida (and who began a lawsuit in this court entitled "Richard C. Becherer, Lawrence Milton Richard, Robert A. Horvath and Shirley L. Horvath, and Henry V. Denolf and Joann L. Denolf, individually, *and on behalf of all others similarly situated,* Plaintiffs,") are bound by the doctrines of res judicata and collateral estoppel to the findings of fact and conclusions of law in my Opinion of August 7, 1992, 799 F.Supp. 755, and the resulting Order and Judgment, for the following reasons:

1. All investors in The Registry Hotel, including Florida plaintiffs, are parties in this case and are represented through named plaintiffs and their counsel;

2. All parties in the several hearings held before me on the motions for summary judgment or dismissal of plaintiffs' fraud claims proceeded on the basis that my decisions would bind all investors.

3. All investors are in privity with the named plaintiffs.

A history of this case is in order. I refer to that section of the first five pages of my Opinion of August 7, 1992 entitled "Background", which I restate here: "This case began with a lengthy complaint containing sixteen counts. It alleged that a group of 298 investors, who asked to be designated as a class, purchased unit interests in a 474–room resort hotel (The Registry Hotel), herein referred to as the hotel, to be located on Pelican Bay in Naples, Florida, for a total price of $89,225,500. Named as defendants are a group, referred to herein as the developer, Can–American Corporation, Can–American Realty Corporation, Shelter Seagate Corporation, Garrett G. Carlson, Graham C. Lount, and Arni Thorsteinson. Also named as defendants are Merrill Lynch, Pierce, Fenner & Smith, Inc.; Frank Lavin; Martin Cicco; Laventhol & Horwath, certified public accountants retained by the developer; Dominion Financial & Investment Corporation; M.A. Mortenson Company; and Winsor/Faricy Architects, Inc.

The counts captioned in the complaint are:

1. Violation of the Exchange Act, § 10(B) and Rule 10b–5;

2. Violations of the Exchange Act, § 20;

3. Violations of the Securities Act, § 12(2);

4. Violation of the Securities Act, § 15;

5. Fraudulent and negligent misrepresentation;

6. Violation of the Land Sales Act;

7. Aiding and abetting/conspiracy;

8. Violation of RICO;

9. Violation of Florida's RICO statute;

10. Breach of fiduciary duty (against named defendant[s]);

11. Breach of fiduciary duty (against named defendant[s]);

12. Breach of fiduciary duty (against named defendant[s]);

13. Malpractice/negligence;

14. Respondeat superior;

15. Breach of warranty; and

16. Breach of contract.

In managing this case, I concluded that there was a strong need for the adoption of special procedures, since the case involved complex issues, multiple parties, and difficult legal questions (Fed.R.Civ.P. 16(c)(10)).

The complaint was filed on August 21, 1989, and there followed a blizzard of motions and briefs. Between August 21, 1989 and April 23, 1990, the date on which I was able finally to schedule a Rule 16 conference, there were ninety docket entries, comprised of discovery motions, Rule 12 and 56 motions, and supporting and response briefs.

Clearly, Rule 16 had to be vigorously applied.

A pretrial conference held on April 23, 1990 began this process. With close questioning of parties' counsel, it appeared that the complaint was bottomed on allegations

of fraud and breach of contract. Three occurrences of fraud were alleged:

1. That the Private Placement Memorandum (the "PPM"), which disclosed that the W.B. Johnson Company was interested in erecting a hotel on Pelican Bay, did not say that hotel was a Ritz–Carlton;

2. That the PPM stated that the hotel was to be furnished with approximately $13.5 million of furniture, fixtures and equipment; and that defendants, or some of them, rather than perform that contractual undertaking, leased the furniture, fixtures and equipment placed in the hotel and thereby burdened the hotel with lease payments; and

3. That fraud surrounded the October 30, 1986 closing date, when the hotel was to be "substantially completed."

That status conference on April 23, 1990, as the record amply demonstrates, compacted the prolix allegations of fraud in the complaint to three manageable areas and, on May 15, 1990, a detailed order managing initial discovery was entered.

In motion hearings, these three occurrences were then addressed.

In an Opinion and Order dated November 20, 1990, I granted a motion for summary judgment on plaintiffs' first fraud claim. I found no fraud in the claim that the investors were not notified that another hotel to be built on Pelican Bay would be a Ritz–Carlton hotel.

On March 15, 1991, I entered an Order for an expedited trial. I determined that the remaining two issues of alleged fraud could be tried as breach of contract claims against the developer Shelter Seagate, Can–American Corporation, Can–American Realty Corporation, and the individual defendants Carlson, Lount and Thorsteinson (referred to collectively as "the Shelter Seagate Group", or as "SSG", or as "the developer"). In that Order I also certified a plaintiff class. Jury trial was waived.

On the second claimed issue of fraud, reformed into a breach of contract claim,

*i.e.*, the decision by the developer-defendants to lease furniture, fixtures and equipment for the hotel rather than to purchase them, resulted, following a full hearing, in a grant of partial summary judgment in favor of the plaintiff class and against the developer-defendants. That ruling was made on May 7, 1991. I reserved for a future hearing a determination of the remedy for that breach.[1]

I held a bench trial on plaintiffs' contract claims against the SSG defendants in May 1991. After the trial on the contract claims against the SSG defendants, all parties to the lawsuit began negotiating a global settlement. At this point the parties asked me to stay closing arguments on trial issues, on the various trial motions, and on motions for dismissal and for summary judgment then pending. I had earlier granted a motion for summary judgment on the claimed breach of contract regarding the leasing of furniture, fixtures, and equipment for the hotel and I likewise deferred taking testimony on the matter of damages caused by that breach. The 298 investors are represented by the law firms of Elwood S. Simon & Associates of Bloomfield Hills, Michigan; Garwin, Bronzaft, Gerstein & Fisher of New York City; and Spector & Roseman of Philadelphia. Settlement negotiations were protracted and, in fact, took the better part of the year 1991 and two months into 1992, when, in February, the parties reported to the court that all claims in the case, those set forth in the original Complaint and the First Amended Complaint, were settled.

The Stipulation Of Settlement, at page 1, described the plaintiffs as:

All persons and entities (the "Unit Owners") who were (i) original purchasers of hotel interests in The Registry Hotel at Pelican Bay, Naples, Florida (The "Registry Hotel") at the October 31, 1986 closing, and (ii) their direct or indirect successors or assigns who are currently Unit Owners....

---

1. That hearing was held on July 16, 1992. See my August 7, 1992 Opinion and Order for my

decision on this issue, 799 F.Supp. 755.

I certified this class for the purposes of settlement on February 14, 1992 and that Order is incorporated herein by reference and made a part hereof. (See Appendix 1). I directed that notice be sent to all parties and, notably, to the 298 investors who began this lawsuit.

Shortly thereafter, I received a letter from plaintiffs' counsel Elwood Simon. In that letter Simon informed me that an attorney, Thomas R. Grady, of Naples, Florida had contacted him and requested that he not communicate with certain of the class members who were now Grady's clients. Simon's letter included copies of letters dated March 9 and 10, 1992, from Grady, who purported to represent individuals who are class members to whom Simon had addressed papers regarding the settlement. In these letters, Grady advised class counsel that no contract was to be made with certain members of the class whom Grady purported to represent. Class counsel requested, and I granted, an Order To Show Cause why Simon and other class counsel could not contact members of the plaintiff class regarding the proposed class action settlement.

At the Show Cause Hearing held on March 19, 1992, Simon and other plaintiffs' counsel argued that they had the right to contact the members of the class because they represented these individuals in the class action lawsuit. On March 24, 1992, I entered an Order stating that class counsel were permitted, and had the duty, to continue communicating directly with their clients, including all members of the certified class, and, or, all plaintiffs or investors represented by named plaintiffs.

Despite these efforts, the global settlement was not completed. Under the terms of the settlement, the number of investors who elected to opt out of the proposed settlement was sufficient to scuttle the agreement.

The proposed settlement now dead, I scheduled oral arguments on the various matters stayed by me while settlement negotiations pended. These hearings were held in June and July of 1992, and I issued my Opinion and Order on August 7, 1992 and Judgment followed. 799 F.Supp. 755.

Sixty five investors in The Registry Hotel, represented as they are by Richard C. Becherer, Lawrence Milton Richard, Robert A. Horvath, Shirley L. Horvath, Henry V. Denolf and Joann L. Denolf, now seek to avoid the binding effect of my August 7, 1992 Opinion and Order and the resulting Judgment. This leads to:

I. *Merrill Lynch's Motion for an Injunction:*

In September, 1992, approximately 65 of the unit owners filed suit against Merrill Lynch in Florida state court in a case entitled *Adams, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.,* Twentieth Judicial Circuit (Collier County, Florida), Civil Action No. 92–2776–CA–01. (These 65 unit owners are hereinafter referred to as the "Florida plaintiffs"). All the Florida plaintiffs are members of the class that I certified for the SSG contract trial. All are investors who are represented by and in privity with named plaintiffs. Importantly, all but two of the claims set forth in the Florida lawsuit were adjudicated by me in my August 7, 1992 Opinion, 799 F.Supp. 755.

Even though the 298 investors were represented at all times in this case through the named plaintiffs and through counsel hereinbefore stated, both that counsel and Thomas Grady, counsel for Florida plaintiffs, now assert that the Opinion, Order and Judgment of August 7, 1992 is not binding on them except as to the adjudication of the contract claims alleged against the Shelter Seagate Corporation defendants.

I now take up Merrill Lynch's motion to enjoin the proceedings pending against it in the Florida state court. Merrill Lynch seeks to enjoin the Florida state court proceedings because the claims raised in that case are precluded by my decision in this case through the application of res judicata and collateral estoppel principles.

I hold that my August 7, 1992 Opinion and the resulting Judgment fully resolve this case. All plaintiffs' claims as inves-

tors were resolved in that Opinion. All the investors in The Registry Hotel are in privity with the named plaintiffs and are before this court. Thus, the August 7, 1992 Opinion and Order and Judgment bind all 298 investors.

As described below, Florida plaintiffs are parties in this case and are represented through named plaintiffs and their counsel. Plaintiffs' Complaint and First Amended Complaint both state that the case is brought "on behalf of a class consisting of all persons and entities who purchased Hotel Interests ...". First Amended Complaint at ¶ 13. It is clear that this action was begun in this court on behalf of all investors long before Florida plaintiffs began their suit in Florida state court in September 1992.

It is also not open to question that named plaintiffs and their counsel represented all investors including Florida plaintiffs in negotiating the proposed settlement to which reference is earlier made. (*See* Appendix 2). Plaintiffs' counsel acted on behalf of all investors in such settlement discussions culminating in their request to me that I certify a class to approve the settlement. On February 14, 1992, I did conditionally certify a class consisting of all investors and tentatively approved the proposed settlement. (See Appendix 1, Order Certifying Class For Settlement). It was because of this that plaintiffs' counsel argued before me at the March 19, 1992 Show Cause Hearing that they had the duty to communicate directly with Florida plaintiffs who are their clients.

As stated hereinbefore, when settlement failed, I decided the remaining matters before me such as the contentions of the parties regarding the breach of contract claim and motions for summary judgment on, or dismissal of, plaintiffs' fraud claims.[2] At no point did plaintiffs' counsel claim that the rulings to be made by me on those matters would only bind the named plaintiffs. All parties in the several hearings proceeded on the basis that my decisions would bind all investors. Now surprisingly plaintiffs' counsel argue that my decision binds only the named plaintiffs.

This is especially significant since plaintiffs' counsel knew before these issues were argued that Thomas Grady also claimed to represent 65 of these investors. I note, too, that plaintiffs' counsel, Elwood Simon, and Florida plaintiffs' counsel, Thomas Grady, are co-counsel in 18 foreclosure cases brought by the Resolution Trust Corporation ("RTC")[3] against Florida plaintiffs in the Florida state court.

It is clear from the record that plaintiffs' counsel proceeded to argue these issues on behalf of all the investors, including Florida plaintiffs.

Counsel for Florida plaintiffs, Thomas Grady, also is aware that all investors are bound by my decision on these matters. At a client meeting held on March 4, 1992, Grady warned Florida plaintiffs that they may be "stuck"[4] with my decision in this

**2.** These motions included: Merrill Lynch's Motions To Dismiss Complaints, Frank Lavin's Motion To Dismiss Complaints, Martin Cicco's Motion To Dismiss Complaints, SSG Defendants' Motion For Summary Judgment on Fraud Claims, SSG's Motion To Dismiss Interstate Land Sales Act Claims, Trustbank's Motion For Summary Judgment, Mortenson's Motion For Stay Pending and Directing Arbitration, Winsor/Faricy's Motion For Stay Pending and Directing Arbitration, Midwest Title's Motion To Be Dropped As Misjoined Party, Plaintiffs' Motion To Join Midwest Title As Defendant, Plaintiffs' Cross–Motion For Summary Judgment As To First Amended Complaint.

**3.** The Office of Thrift Supervision ordered the receivership of Trustbank Federal Savings Bank and appointed RTC as Receiver. The assets of Trustbank that succeeded to the RTC as Receiver included approximately 356 loans that were made to investors to finance the purchase of the hotel units in The Registry Hotel. RTC, as Receiver for Trustbank, currently holds those loans. Those loans are evidenced by mortgage notes executed by unit owners and are secured by first mortgages on the respective hotel units in The Registry Hotel. Affidavit of Jacob J. Huber, Field Site Manager for RTC as Receiver for Trustbank, filed on July 15, 1992.

**4.** Grady stated at the client meeting held on March 4, 1992 that:

The law is simply not clear on what's called collateral estoppel and res judicata and issue preclusion. Basically, where an issue has been litigated once before, when does it bind a party and what parties does it bind? I can't answer it because I don't know what the rul-

case because of res judicata and collateral estoppel principles. *Plaintiffs' Supplemental Motion For Sanctions*, Exhibit C, Transcript of March 4, 1992 Client Meeting, p. 43–44.

An additional point: When in March, 1991, I certified a class as to the contract claims against the SSG defendants, plaintiffs' motion to certify a class on the fraud and remaining claims was not denied by me. In hearings resolving these issues in June and July of 1992, no party raised the need to again certify a class.

I turn now to the law governing the issues raised by Merrill Lynch's motion to enjoin the Florida proceedings.

### A. Res Judicata and Collateral Estoppel:

■ The doctrines of res judicata and collateral estoppel preclude parties from relitigating claims and issues which have previously been decided. In *Gargallo v. Merrill Lynch*, 918 F.2d 658 (6th Cir.1990), the U.S. Court of Appeals for the Sixth Circuit distinguished the doctrines of res judicata and collateral estoppel:

> Res judicata and collateral estoppel are not the same. Res judicata, or claim preclusion as it is more helpfully termed, is the doctrine, simply stated, by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action....
>
> Collateral estoppel, or issue preclusion as it is better termed, precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim of cause of action.

*Id.* at 660–61. *See also Overseas Motors, Inc. v. Import Motors Limited*, 375 F.Supp. 499 (E.D.Mich.1974), *aff'd.*, 519 F.2d 119 (6th Cir.1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) (where I discussed the distinction

between res judicata and collateral estoppel and the requirements for collateral estoppel). Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the that action. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

■ Res judicata and collateral estoppel principles bar the relitigation of a claim or an issue decided in a prior case, where the party against whom the bar is used was a party, or in privity with a party, in the prior action. See *Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982) ("A person against whom the conclusive effect of a judgment is invoked must be a party or a privy to the prior judgment"); *Estoppel by Judgment*, 31 A.L.R.3d 1044 at 1067 ("The doctrine of collateral estoppel can be invoked by a stranger to the judgment only against one who was a party, or in privity with a party, to the judgment and had a full opportunity to litigate the relevant issue"); 1B Moore's Federal Practice ¶ 0.411[1] (1965) ("At common law this preclusive effect extended to those in privity with the parties").

■ Courts are not bound by rigid definitions of the parties or their privies for purposes of applying res judicata and collateral estoppel. *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir.1979), *cert. den.* 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). In *Jackson, supra*, the U.S. Court of Appeals for the Ninth Circuit held that members of an alleged class were bound by a judgment in a suit that was brought as a class action and "treated" as such even though a class had never been certified. *Id.* at 1126. In the first suit, a declaratory judgment action was filed on behalf of all persons arrested at a college rally in 1969. A three-judge federal court panel rejected the plaintiffs' challenge to the constitutionality of the arrests. The plaintiffs brought this suit on behalf of themselves and all

---

ing is and I don't know against whom the judge will say it belongs, but there is a risk that there will be some ruling there and it may be adverse and you may be stuck with it. It may also be favorable and they may be

stuck with it, so they've got the same uncertainty facing them. I think that's the best that I can do with you in answering that.
Transcript of Thomas A. Grady, P.A. March 4, 1992 Client Meeting, p. 44.

others similarly situated. Although a class was never certified, the parties and the court treated the suit as a class action.

Subsequently, a second suit was brought by several of the persons arrested to challenge the constitutionality of the mass arrest. The defendants moved for summary judgment asserting that the claim was barred by res judicata. The plaintiffs argued that res judicata did not bar the second suit because a class was never certified in the first case and thus the cases involved different parties. The U.S. Court of Appeals for the Ninth Circuit disagreed, stating that:

> *Carrillo* [the first suit] was brought on behalf of all those who were arrested January 23 at the College. It was brought as a class action and treated by the court as a class action. Virtually all of those arrested were represented by counsel in the *Carrillo* case.

*Id.* at 1126. The court further noted that:

> Since *Carrillo* [the first suit] was never certified as a class action, plaintiffs argue that it should not be considered in that light. In view of the considerations set forth in the text, we believe that this would elevate form over substance, which we decline to do in this case.

*Id.* at 1126 n. 7.

■ In this case the Florida plaintiffs are parties and are adequately represented by the named plaintiffs and their counsel. As in *Jackson v. Hayakawa*, both the Complaint and the First Amended Complaint in this case indicate that the suit is brought on behalf of all the investors in The Registry Hotel. Additionally, the proposed settlement sought to resolve all claims as to all investors. The settlement was not limited to the plaintiffs' contract claims against the SSG defendants or to the named plaintiffs.

Similarly, plaintiffs' counsel proceeded in a manner consistent with the fact that they represented all investors. Plaintiffs' counsel strenuously argued before me at the March 19, 1992 Show Cause Hearing that they were permitted, and had the duty, to communicate directly with all investors because they represent them in this litigation.

(See Appendix 3, Order Dated March 24, 1992). Interestingly, after I issued my August 7, 1992 Opinion and Order, Merrill Lynch contacted investors and attempted to negotiate another settlement. After the Florida proceeding was started, plaintiffs' counsel filed an emergency motion arguing that I should enjoin Merrill Lynch's unauthorized solicitation of settlement with investors, including Florida plaintiffs, because the investors are represented by them. *Plaintiffs' Memorandum Of Law In Support Of Their Motion To Enjoin Merrill Lynch's Unilateral Solicitation Of settlements with Investors*, p. 3–4.

**B. Privity:**

I turn now to this principle since it is an important aspect of the res judicata doctrine.

■ The term privity defines a legal conclusion that the relationship between a party and a nonparty is sufficiently close to mandate the application of the doctrine of res judicata. *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3rd Cir.1990). *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95 n. 38 (5th Cir.1977) ("Privity ... represents a legal conclusion that the relationship between [the parties] is sufficiently close to [support] preclusion"). The doctrine of privity is to be applied with flexibility. *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980).

■ Federal courts have defined several types of relationships as "sufficiently close" to justify preclusion. The relationship between a party and a nonparty is sufficiently close to justify preclusion when the nonparty has succeeded to the party's interest in property. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Similarly, privity exists when a nonparty controls the original suit. *Dudley v. Smith*, 504 F.2d 979 (5th Cir.1974). Privity also exists when the interests of a nonparty are adequately represented by a party in the initial action. *Ellentuck v. Klein*, 570 F.2d 414, 425 (2d Cir.1978).

In the recent case of *Sanders Confectionery, et al. v. Heller Financial, et al.*, 973 F.2d 474 (6th Cir.1992), the U.S. Court of Appeals for the Sixth Circuit discussed the concept of privity. The court stated that:

> Res judicata also bars those in privity with parties from bringing suit later. Privity in this sense means a successor in interest to the party, one who controlled the earlier action, *or one whose interests were adequately represented.*

973 F.2d at 481 (emphasis added).

In discussing when a "party's interests are adequately represented", the court in *Sanders* referred to *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634 (2d Cir.1987), *cert. den.* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). In *Amalgamated Sugar*, the court held that the interests of a party are adequately represented when the party does not have a different interest in the case. In *Amalgamated Sugar*, an acquiring corporation filed suit against the target corporation challenging the validity of the target's poison pill stock purchase plan. The court entered a consent judgment which was converted into a final judgment permanently enjoining the implementation of the stock purchase plan. Subsequently, a shareholder brought suit to establish the validity of the stock purchase plan. The court held that the corporation adequately represented the shareholder in the prior suit because the shareholder did not have a different interest in the claim. That is, both parties asserted the same cause of action—defending the validity of the stock purchase plan. *Id.* at 641. Thus, the court held that the shareholder was in privity with the corporation and his or her subsequent suit was barred by res judicata. *See also Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710 (S.D.N.Y. 1987) (The court held that a congruence of interests between a corporation president and the corporation's insurer in resisting a claim of fraud was sufficient to mandate a finding of privity).

In *Sanders*, the U.S. Court of Appeals for the Sixth Circuit adopted the *Amalgamated Sugar* test to determine when a party's interests are adequately represented so as to be in privity with another party. The court held that when the parties have the same interest in the case, the nonparty is adequately represented. In *Sanders*, the court held that the shareholder did have an interest in the case different from the corporation. In that case, the corporation filed a petition in bankruptcy court. The end result of the bankruptcy action was a bankruptcy plan confirmed in an order of the court constituting a final judgment. The bankruptcy plan released the lender Heller from any lawsuits arising from the financing of the corporation. The corporation later filed a lender liability suit against Heller. A shareholder also brought a suit alleging that Heller had violated securities law disclosure requirements with respect to the sale of securities. The Court of Appeals for the Sixth Circuit held that the suit by the corporation was barred by res judicata because the bankruptcy court judgment bound the corporation. Heller argued that the shareholder's suit was also barred because the shareholder was in privity with the corporation. The Sixth Circuit held that the corporation could not adequately represent the shareholder because only a shareholder could raise the securities law disclosure claim. Thus, the court held that the shareholder was not in privity with the corporation and his suit was not barred by res judicata.[5]

■ Under the *Sanders* and *Amalgamated Sugar* tests, Florida plaintiffs are also in privity with the named plaintiffs in *Becherer.* The relationship between Florida plaintiffs and the named plaintiffs is "sufficiently close" to support a finding of privity. Both are in the group of investors that purchased units in The Registry Hotel. Both have the same interest in the case,

---

5. *See also Saginaw v. Consumers Power Co.,* 304 Mich. 491, 8 N.W.2d 149 (1943) ("The intervening plaintiffs, while not actually present in the former suit, were parties by representation and are bound by the judgment."); *McIntosh v. City of Pittsburgh,* 112 Fed. 705 (Cir.Ct.W.D.Pa.1901) (The court held that nonparties could be held bound to the results of a prior suit if their interests were identical to the party's interest in the prior suit.)

*i.e.*, both were identically situated and both raise the same causes of action. Florida plaintiffs' interest in The Registry Hotel and the underlying litigation is identical to the named plaintiffs' interest. I held that when I certified a class that included the Florida plaintiffs for the contract claims against the SSG defendants. The alleged fraud claims against Merrill Lynch are no different. All investors purchased their hotel units in the same time period and relied on the same Private Placement Memorandum in doing so. Florida plaintiffs are therefore identically situated to the named plaintiffs in this case with respect to the fraud claims against Merrill Lynch and the named plaintiffs and their counsel adequately represented the Florida plaintiffs in *Becherer*.[6] Plaintiffs' counsel argued that in a brief in which they stated that they adequately represented Florida plaintiffs' interests. *Plaintiffs' Memorandum of Law In Opposition To Motion To Intervene*, p. 3. This, coupled with the fact that Florida plaintiffs' interest in the claims against Merrill Lynch is identical to that of the named plaintiffs in this case, aptly demonstrates that Florida plaintiffs are adequately represented. Under the test enunciated in *Sanders Confectionery, supra*, Florida plaintiffs are in privity with the plaintiffs in this case. Florida plaintiffs' state court proceeding is therefore barred as to the claims already litigated in *Becherer*.

### C. Collateral Estoppel:

■ Even though Florida plaintiffs' claims are barred by the doctrine of res judicata for the reasons stated herein, they are also barred by the principle of collateral estoppel. The doctrine of collateral estoppel precludes Florida plaintiffs from relitigating issues of fact or law actually litigated and decided by me in this case. I have decided investors' claims against Merrill Lynch and the other defendants in this case; Florida plaintiffs cannot now attempt to litigate those issues again.[7]

My holding in this Opinion and Order that Florida plaintiffs are parties in this case and are in privity with the named plaintiffs and are also collaterally estopped extends to all investors in The Registry Hotel. The doctrine of res judicata bars all investors from relitigating claims that have already been decided in this case. Res judicata principles also preclude relitigation of investor claims against other *Becherer* defendants, not just Merrill Lynch.

### II. *Florida Plaintiffs' Response To Merrill Lynch Motion:*

I turn now to arguments made by Florida plaintiffs in response to Merrill Lynch's motion for an injunction.

### A. Jurisdiction To Decide Motion For Injunction:

■ Florida plaintiffs, in opposing the Merrill Lynch motion to enjoin the state court proceeding, also argue that once a notice of appeal was filed, I am without jurisdiction to consider the res judicata effect of its judgment or to otherwise rule on a request to enjoin state action. On September 11, 1992, Florida plaintiffs filed a notice of appeal from my August 7, 1992 Opinion and Order and the resulting Judgment.[8] Plaintiff class also filed a notice of appeal on September 17, 1992.

---

6. Merrill Lynch also argues that the involvement of the Association of Unit Owners ("AUO") in this suit supports a finding of privity. Merrill Lynch alleges that the Florida plaintiffs are members of AUO. They claim that because AUO organized, financed, and controlled the *Becherer* litigation, the Florida plaintiffs are bound by the result of the case. In support of this contention Merrill Lynch cites *General Foods Corp. v. Massachusetts Dept. of Public Health*, 648 F.2d 784 (1st Cir.1981). Because of the holding that I make here, this issue need not be reached.

7. *But see* Section II.C. of this Opinion and Order.

8. The apparent anomaly between Florida plaintiffs filing a motion to intervene in this case and their simultaneous filing of a Notice of Appeal of this court's August 7, 1992 Opinion is explained in one of their briefs. Counsel for Florida plaintiffs states that "while acknowledging that intervention by a nonparty is generally the better practice, the Florida [plaintiffs] also have standing to appeal the judgment in Merrill Lynch's favor even absent intervention". *Flori-*

In *American Town Center v. Hall 83 Associates*, 912 F.2d 104 (6th Cir.1990), the U.S. Court of Appeals for the Sixth Circuit laid out the framework for determining when a district court has jurisdiction to decide motions presented to it after an appeal is filed. The court stated:

> The standard for jurisdiction after the filing of the notice of appeal enunciated in [*Nation Labor Relations Board v.] Cincinnati Bronze* [829 F.2d 585 (6th Cir.1987)] is that a district court may enforce its judgments but not expand upon it. In contrast to the cancellation of lis pendens, which was simply an enforcement of the judgment, enjoining state litigation entails a much greater involvement by the district court. Specifically, to issue an injunction, the district court would have to rule on the res judicata effect of its judgment, thus requiring a comparison between the state complaint and the federal action. Since there are different parties and additional claims in the state court action, the district court would be expanding upon its opinion rather than simply enforcing its judgment, the key distinction of *Cincinnati Bronze*. Thus, we conclude that the district court was without jurisdiction to enter an injunction.

*Id.* at 110–111.

The parties in the Florida action are no different from the parties before me. As the court held in *Cincinnati Bronze, supra.*, by issuing an injunction against the relitigation of claims I have already decided, I would be enforcing my Judgment, not expanding upon it. Thus, I conclude that I have jurisdiction to enjoin the Florida state court proceeding even though an appeal has been filed.[9]

## B. Personal Jurisdiction over Florida Plaintiffs:

■ Florida plaintiffs also argue that this court does not have personal jurisdiction over them because no class was ever certified for purposes of the Merrill Lynch fraud claims. Counsel for Florida plaintiffs has filed affidavits from most of those plaintiffs stating that "With the single limited exception of the Shelter Seagate contract claim, I have never submitted to the jurisdiction or venue of this court ...". *Florida Action Intervenors' Supplemental Memorandum*, Exhibits 1 through 39.

Counsel for Florida plaintiffs confuses the concept of personal jurisdiction with the res judicata issue. I have personal jurisdiction over the Florida plaintiffs because they are parties to the case before me through their representatives. They also are members of the class in the breach of contract trial which I conducted, and as such are bound by the results of that trial. For these reasons, I conclude that there is personal jurisdiction over them. As Merrill Lynch properly points out, the Florida plaintiffs cannot claim that this court has personal jurisdiction over them in order to collect the $6.7 million judgment from SSG[10], of which they are recipients as members of the plaintiff contract class, and then turn around and say that this court does not have personal jurisdiction over them with respect to the other issues in the case.

---

da *Action Intervenors' Reply To Merrill Lynch's Supplemental Brief Regarding Jurisdiction*, p. 3.

9. Merrill Lynch makes a second argument. It argues that because a post-judgment motion was pending, the notice of appeal is void pursuant to Rule 4(a)(4) of the Federal Rules of Appellate Procedure and the court retains jurisdiction to hear the motion for an injunction. This issue is not addressed in this Opinion because of my holding that this court still has jurisdiction to enforce its judgments.

10. Florida plaintiffs are members of the class that I certified for purposes of the expedited trial on plaintiffs' contract claims against the

SSG defendants. On May 7, 1991, following a full hearing, I granted partial summary judgment in favor of the plaintiffs on the breach of the furniture, fixtures, and equipment ("FFE") contract. Appendix D of the August 7, 1992 Opinion contains a transcript stating the reasons and grounds for that grant of partial summary judgment. A hearing was held on July 16, 1992 in order to determine the amount of damages that plaintiffs were entitled to as a result of that breach. Section VIII of the August 7, 1992 Opinion contains my holding that plaintiffs are entitled to damages for the breach of the FFE contract in the amount of $6,733,224.56.

C. Res Judicata Effect of This Case on the Florida Proceeding:

 Florida plaintiffs also assert that the res judicata and privity issues can be raised by Merrill Lynch in the Florida state court proceeding, and thus there is no need for an injunction. However, the fact that Merrill Lynch has the option of raising these issues as a defense in the Florida state court proceeding does not preclude them from raising the issue before me. I agree with the court in *Bechtel Petroleum, Inc. v. Webster*, 796 F.2d 252, 253 n. 2 (9th Cir.1986), which noted that the district judge who presided over earlier litigation is in the best position to assess the res judicata claim.

 I have the power to enjoin the Florida action under the relitigation exception to the Federal Anti–Injunction Act, 28 U.S.C. § 2283, which allows federal courts to enjoin state court proceedings when necessary "to protect or effectuate its judgments".

Florida plaintiffs cite the U.S. Supreme Court case of *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988), for the proposition that I cannot enjoin claims or issues that were not presented and decided in *Becherer*. Prior to the U.S. Supreme Court decision in *Chick Kam Choo*, a federal court had the power to enjoin state court proceedings to the full extent that they were precluded under the doctrine of res judicata. That is, a federal court could enjoin not only the claims that were raised in the initial suit, but also claims that could have been raised in that suit. *See* 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4226 (1988 & Supp.1990), p. 544–45 (citing cases where federal courts properly enjoined state court proceedings on parts of claims that could have, but were not, raised in federal action); *Musselman v. Guttman Institute*, 674 F.Supp. 1038, 1039 (S.D.N.Y. 1987). However, the U.S. Supreme Court's decision in *Chick Kam Choo* called this into question.

In *Chick Kam Choo*, the U.S. Supreme Court held that a federal district court did not have the power under the relitigation exception to the Anti–Injunction Act to enjoin a claim that was not decided by the court. The Court stated that:

> The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court.... [A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court.

*Id.* at 147–48.

The Court stated that the requirement that an issue be previously presented and decided before it could be enjoined under the relitigation exception is "strict and narrow". *Id.* at 148.

At least one court has held that, based on *Chick Kam Choo*, a federal court cannot enjoin issues that it has not actually decided. In *Staffer v. Bouchard Transp. Co.*, 878 F.2d 638 (2d Cir.1989), the court stated that:

> The language and facts of *Chick Kam Choo* make clear that the part of the relitigation exception to the Anti–Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata. The relitigation exception does not protect the full res judicata effect of a federal court's judgment; rather, it protects only matters that actually have been decided by a federal court.... Undoubtedly, res judicata can bar claims that might and should have been raised but were not, ... but, for Anti–Injunction purposes, only "relitigation" can be enjoined.

*Id.* at 643. *See also American Town Center v. Hall 83 Associates*, 912 F.2d 104, 112 n. 2 (6th Cir.1990) (The court recognized that *Chick Kam Choo* precluded a federal court from enjoining issues that were not decided by the court. The court found that an alternative basis for affirming the district court's denial of an injunction existed because the state complaint raised two issues that the district court had not decided). However, the U.S. Court of Appeals

for the Second Circuit in *Staffer* also noted that while a federal court did not have power to enjoin issues which were not presented to and decided by it, it still would be proper for the state court to preclude the new claims based on the doctrine of res judicata. *Id.* at 641.

I now compare the Florida plaintiffs' Florida state court First Amended Complaint with the claims that were litigated before me.

In the Florida First Amended Complaint, the only issues raised which were not involved in my case are Counts 1 and 5. Count 1 raises the issue of whether the hotel units are exempt from registration requirements under Florida Law. Count 5 alleges that the Merrill Lynch brokers recommended and sold a high-risk security to individuals when they knew this type of investment was not suited for them.

Florida plaintiffs also argue in their brief that the Florida securities law claim (Count 4) was not decided by me. They state that Florida Securities law has a slightly different requirement than the federal securities law—different elements and burdens of proof (*i.e.*, Florida law does not require scienter on the part of the defendant). This argument is unavailing since I held in my case that there were no misrepresentations in the sale of the securities. The dismissal of the fraud claims did not involve scienter. The August 7, 1992 Opinion did dispose of this fraud issue.

Similarly, the Florida plaintiffs assert that Counts 3 and 10, the Florida Condominium Act claims, were not addressed in my case. Count 10 citing the Florida Condominium Act is based on the allegation that funds for the purchase of the hotel units were released from escrow prior to the completion of the hotel. This was addressed at length in the August 7, 1992 Opinion. Additionally, Count 3 citing the Florida Condominium Act is based on the allegation of misrepresentation in the sale

of securities, claims that I also disposed of in that opinion.

The only claims that the Florida plaintiffs raise in their Florida First Amended Complaint which were not addressed by me are Counts 1 and 5. Under *Chick Kam Choo* and *Staffer*, I do not have the power to enjoin these claims under the relitigation exception even though they are precluded by res judicata. It would, however, be proper for the Florida state court to enjoin Counts 1 and 5 based on this doctrine. The remaining claims were litigated in this case and should be enjoined. Merrill Lynch's motion for an injunction against Florida plaintiffs' state court proceedings is therefore GRANTED as described herein. An Order so providing should be presented forthwith by Merrill Lynch.

### III. *Florida Plaintiffs' Motion To Intervene:*

 Florida plaintiffs have filed a motion to intervene in this case. Fed. R.Civ.P. 24 provides in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

See also *Triax Co. v. TRW, Inc.*, 724 F.2d 1224 (6th Cir.1984).

Florida plaintiffs claim that they need to intervene in this case for two reasons. First, they allege that they need to intervene in order to appeal my August 7, 1992 Opinion which dismissed the *plaintiff class* ' fraud claims against Merrill Lynch [11] and they repeat again that no class was ever certified for the fraud claims and thus the Opinion should only dismiss the named plaintiffs' fraud claims. Plaintiffs' counsel

---

**11.** Strangely enough, the Florida plaintiffs already filed a notice of appeal in this case on September 11, 1992. That notice appeals this court's August 7, 1992 Opinion and Judgments

to the extent that they bind the Florida plaintiffs to this court's decision on the fraud claims for which a class was not certified.

have also filed a Notice of Appeal dated September 17, 1992. In that notice, plaintiffs' counsel appeal that aspect of the August 7, 1992 Opinion and Order and resulting Judgment. I conclude that Florida plaintiffs' interest is adequately represented by the plaintiffs' counsel.[12]

Florida plaintiffs also argue that they need to intervene in this case to contest on appeal this court's exercise of personal jurisdiction over them. They contend that appeal by them has not become moot by the appeal filed by plaintiffs' counsel. They claim that plaintiffs' counsel have no interest in challenging this court's apparent exercise of personal jurisdiction over them on the fraud claims. Because Florida plaintiffs are unquestionable parties to this case, they already have standing to appeal this court's exercise of personal jurisdiction even though that appeal is frivolous. *Thompson v. Freeman*, 648 F.2d 1144 (8th Cir.1981). Thus, Florida plaintiffs' (or Florida Action Intervenors) Motion to Intervene is DENIED.

## IV. *SSG Defendants' Motion for an Order Amending this Court's Findings of Fact and Conclusions of Law:*

SSG Defendants move this court, pursuant to Fed.R.Civ.P. 52(b) and 59, to issue an Order amending the Court's Findings of Fact and Conclusions of Law found in the August 7, 1992 Opinion. Specifically, SSG defendants contend that:

1. The court's award of $1,290,930.47 in damages for lost interest income constitutes a double recovery of interest;

2. The court's failure to exclude the portion of the Northern Telecom lease that is attributed to the lease of telephones was incorrect;

3. The court's failure to conclude that SSG was entitled to restitution of $2,585,771 for improvements it made to the hotel was incorrect;

4. The court's conclusion that Can–American Corporation, Can–American Realty Corporation, Garrett G. Carlson, Arni Thorsteinson, and Graham C. Lount are secondarily liable for SSG's breach of the FFE lease contract are not based upon Findings of Fact.

Below is a discussion of each of these contentions.

### 1. *Double Recovery of Interest:*

■ SSG Defendants contend that awarding damages for the amount of the lease payments and damages for lost interest income gives plaintiffs a double recovery of interest. In my August 7, 1992 Opinion, I held that because plaintiffs made monthly lease payments, they lost the use of the money they used to make those lease payments and therefore they are entitled to lost interest income. SSG argues that interest is built into the amount of the lease payments and thus the plaintiffs are already getting back interest in the guise of the lease payments. According to SSG, the award of lost interest income constitutes a double recovery of interest.

SSG's argument overlooks the reality of the transaction. SSG's breach of the FFE lease caused the plaintiffs to incur substantial lease payments that they otherwise would not have incurred. The portion of the lease payments which constituted interest is a cost of leasing the furniture, fixtures, and equipment. As such, plaintiffs are entitled to this recovery. I also awarded plaintiffs lost interest income for the amount of interest that would have been earned had no lease payments been required and the monies been invested instead. Plaintiffs are likewise entitled to this amount. Thus, damages for the amount of the lease payments and lost interest income thereon does not give plaintiffs a double recovery of interest.

---

**12.** Florida plaintiffs state that they already have standing to appeal this court's August 7, 1992 Opinion regarding the Merrill Lynch fraud claims. They base this argument on the case of *Thompson v. Freeman,* 648 F.2d 1144 (8th Cir. 1981). However, Florida plaintiffs' counsel states that he filed a motion to intervene because intervention by a nonparty is generally a better practice.

### 2. *Northern Telecom Lease:*

■ The August 7, 1992 Opinion awarded plaintiffs damages for the full amount of the Northern Telecom lease. SSG argues that the portion of the lease that was for the lease of telephones in individual hotel units should be excluded from plaintiffs' damage award. SSG states that the Private Placement Memorandum provided that SSG was allowed to lease telephones for each individual room. The amount of the lease for telephones for each unit was not excluded from the amount of the total Northern Telecom lease because plaintiffs' expert, Stanley Blumin, testified that the amount was negligible or insignificant. Now, SSG provides the affidavit of Charles M. Morris who states the portion of the Northern Telecom lease attributed to the lease of the telephones for individual hotel units was $310,500.[13] SSG contends that this amount should be excluded form plaintiffs' damage award.

The information provided in Morris' affidavit was not offered at the damages hearing held on July 16, 1992. Plaintiffs offered the testimony of their expert Blumin, who testified that the amount of the lease of telephones for individual units was insignificant and thus should not be excluded from the damage amount. SSG did not offer the testimony of Morris to contradict Blumin's conclusion. To permit this now would not allow plaintiffs to have an opportunity to cross examine Morris. Thus, I cannot consider the affidavit of Morris. At the October 16, 1992 hearing, I offered SSG defendants the opportunity to file a motion to reopen the case on this issue and they declined. Plaintiffs are therefore entitled to recover the full amount of the Northern Telecom lease as held in my previous Opinion.

### 3. *Restitution for Improvements:*

SSG argues that it made extra contributions to the hotel under the mistaken belief that it had the right to lease FFE in order to pay for the additions. These extra contributions include the addition of the Presidential suite, extra tennis courts, and other additions to the physical structure. SSG contends that it is entitled to restitution of $2,522,771 for these additions.

SSG's position on restitution was briefed and argued at the July 16, 1992 damages hearing. I disposed of that argument at page 776 of 799 F.Supp. An order denying the motion with respect to these three contentions is entered herewith.

### 4. *Secondary Liability:*

SSG defendants assert that my conclusion that Can–American Corporation, Can–American Realty Corporation, Garrett G. Carlson, Arni Thorsteinson, and Graham C. Lount improperly held themselves out to investors as the developer of The Registry Hotel is not supported by specific findings of fact. SSG alleges that the court failed to comply with Fed.R.Civ.P. 52 which requires the court to find the facts specifically and state separately its conclusions of law.

In order to meet that objection, I herein make specific Findings of Fact from the trial which are being set forth in an amendment to my August 7, 1992 Opinion and Order. This amendment will be issued separately from this Opinion and Order, but for clarity, it is also made a part hereof.

### V. *Plaintiffs' Motion for Reconsideration of August 7, 1992 Opinion Granting Trustbank's Motion for Summary Judgment:*

■ Plaintiffs move, pursuant to Local Rule 7.1(h), for reconsideration of the August 7, 1992 Opinion granting defendant Trustbank's Motion for Summary Judgment. Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the

---

**13.** In his affidavit, Mr. Morris asserts that the damage award should be reduced by $310,500, which equals the cost of leasing 1,027 telephones for the hotel for six years.

case must result from a correction thereof.

Plaintiffs contend that the August 7, 1992 Opinion is defective because of the court's failure to consider the additional evidence derived from the limited discovery granted with respect to Trustbank's motion.

On June 25, 1992, oral arguments were held on Trustbank's Motion for Summary Judgment. At that hearing, I granted plaintiffs permission to conduct limited discovery on the issue of the applicability of the *D'Oench Duhme* doctrine. Plaintiffs submitted their Second Set of Interrogatories and Document Requests to Trustbank on July 15, 1992. At a hearing on July 16, 1992, I granted Trustbank two weeks to respond to the limited discovery request and plaintiffs one week after that to respond. Pursuant to that schedule, Trustbank's discovery responses were due July 30, 1992 and plaintiffs' response was due on August 6, 1992. However, plaintiffs state that Trustbank's counsel obtained an extension until August 3, 1992. As a consequence, plaintiffs did not intend to file their response until August 10, 1992. I issued my Opinion and Order on August 7, 1992, before plaintiffs filed their response to the discovered material. Plaintiffs argue that my failure to consider the additional evidence rendered the August 7, 1992 Opinion granting Trustbank's motion for summary judgment defective.

The problem with plaintiffs' argument is that Trustbank's discovery response was filed with the court on August 5, 1992. Thus, I did have the evidence before me when I decided Trustbank's motion for summary judgment. Additionally, the evidence produced as a result of the limited discovery did not produce any new information that plaintiffs' counsel did not have beforehand. The evidence produced in the limited discovery request does not change the outcome of that motion. Thus, plaintiffs' Motion for Reconsideration of the August 7, 1992 Opinion Granting Defendant Trustbank's Motion for Summary judgment is DENIED and an order so providing is entered herewith.

**14.** National Association of Securities Dealers.

## VI. *Plaintiffs' Motion for Leave to Register Judgments In Other Districts:*

▮▮▮ Plaintiffs move for an order allowing the Final Judgment entered on August 27, 1992 against the SSG defendants to be registered with the U.S. district courts for Florida and Minnesota. Plaintiffs contend that they have been unable to locate any assets of the SSG defendants in the State of Michigan. They do assert that these defendants have assets in Florida and Minnesota.

▮▮▮ Pursuant to 28 U.S.C. § 1963, a judgment entered by a district court may be registered in any other district when (a) the judgment has become final by appeal, (b) upon expiration of the time for appeal, or (c) when ordered by the court that entered the judgment for good cause shown. Plaintiffs argue that good cause exists here. A showing that a defendant has property in another district and insufficient property in the district rendering the judgment to satisfy the judgment is sufficient reason for permitting the registration of the judgment in other districts. *See* Siegel, *Commentary to 1988 Revision,* 28 U.S.C. § 1963 (West Supp.1989).

At the hearing on October 15, 1992, I allowed SSG defendants one additional week to submit a brief in opposition to plaintiffs' motion to register the judgment in Florida and Minnesota. SSG defendants declined to submit such a brief. Plaintiffs have shown good cause exists to allow them to register the August 27, 1992 Judgment in other districts. Plaintiffs' motion is therefore GRANTED and an order so providing is entered herewith.

## VII. *Merrill Lynch's Motion to Stay Arbitration Proceedings:*

On October 8, 1992, Merrill Lynch filed a motion to stay arbitration of the securities claims in the Florida state court proceeding. Because I grant Merrill Lynch's motion for an injunction against the Florida plaintiffs' state court proceeding, and for the same reasons, the NASD [14] arbitration proceeding is also enjoined. An order so

providing should be presented forthwith by Merrill Lynch.

## VIII. *M.A. Mortenson's Motion For Clarification:*

 Defendant M.A. Mortenson moves this court pursuant to Fed.R.Civ.P. 59(e) and Local Rule 7.1(h) for clarification of my August 7, 1992 Opinion. Mortenson seeks clarification as to whether the court's decision to dismiss certain of plaintiffs' claims requires dismissal of identical claims against it. Specifically, Mortenson asserts that my decision to dismiss plaintiffs' securities fraud, Land Sales Act, and joint venture claims against Merrill Lynch and Trustbank requires dismissal of these claims against Mortenson.

In my August 7, 1992 Opinion, I held that plaintiffs' claims against Mortenson must be stayed to permit arbitration. The parties are bound as a matter of law by the arbitration clause found in Article 16.1 of the construction contract between Mortenson and SSG. (See 799 F.Supp. at page 775). Consequently, the action by plaintiffs against Mortenson must be stayed until arbitration is had in accordance with the terms of the agreement. An order so providing is entered herewith.

IT IS SO ORDERED.

## AMENDED ORDER AND INJUNCTION

This Order and Injunction amends my December 5, 1992, Order and Injunction in this case.

Merrill Lynch's Motions for Injunction against Proceedings having been briefed and argued by counsel, including Thomas Grady, counsel for the plaintiffs in the Florida Action defined below; the Court having granted the Motions and entered an order for the reasons stated in its Opinion and Order dated November 24, 1992; and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that:

1. All claims, and issues raised therein, by all persons and entities who purchased Hotel Interests in The Registry Hotel at Pelican Bay pursuant to the Private Place-ment Memorandum and the supplements thereto and/or their successors and assigns (hereinafter collectively "Plaintiffs") against Merrill Lynch and the other defendants in this action have been ruled upon or precluded by this Court. Under the doctrines of res judicata and collateral estoppel, Plaintiffs are bound by this Court's rulings and are barred from relitigating or arbitrating such claims and issues.

2. Plaintiffs in *Adams v. Merrill Lynch, Pierce, Fenner & Smith,* Twentieth Judicial Circuit in and for Collier County, Florida, Civil Action No. 92–02776–CA (hereinafter "the Florida Action"), and their respective officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order and Injunction by personal service or otherwise, are permanently enjoined from maintaining or proceeding with all claims against Merrill Lynch except Counts I (nonregistration under the Florida Securities Act) and V (suitability) in their First Amended Complaint.

3. While this Court lacks authority under 28 U.S.C. § 2283 to enjoin the prosecution of Counts I and V in the First Amended Complaint in the Florida Action because these claims were not pleaded before this Court, this Court has held in its November 24, 1992, Opinion and Order that these claims were includable in this action and are therefore precluded by res judicata. This Court requests the Florida Court to dismiss Counts I and V of the First Amended Complaint in the Florida Action with prejudice on res judicata grounds.

4. Plaintiffs, including but not limited to all Claimants in the National Association of Securities Dealers, Inc. arbitration proceeding entitled *In the Matter of Arbitration Between Adams, et al., Claimants, and Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., Respondents,* and Plaintiffs' officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them who receive actual notice of this Order and Injunction by personal service or otherwise, are permanently enjoined from filing, main-

taining, prosecuting or joining in any pending or future arbitration proceedings (including *Adams*) or other lawsuits against Merrill Lynch regarding The Registry Hotel at Pelican Bay except Counts I (nonregistration under the Florida Securities and Investor Protection Act) and V (suitability).

5. This Court retains jurisdiction to enforce this and its other Orders.

IT IS SO ORDERED.

## APPENDIX 1

### ORDER CERTIFYING CLASS AND PROVIDING FOR NOTICE OF AND HEARING ON SETTLEMENT OF CLASS ACTION

[Filed Feb. 14, 1992]

PRESENT: HONORABLE JOHN FEIKENS, U.S. District Judge.

Class Plaintiffs, certain Defendants and certain third parties (collectively, the "Settling Parties"), having made an application, pursuant to Rules 23(e) of the Federal Rules of Civil Procedure, for an Order approving the settlement (the "Settlement") of the above-captioned action in accordance with the Stipulation of Settlement dated the 14th day of February, 1992, and the exhibits annexed thereto (the "Stipulation"); and the Court having read and considered the Stipulation and related agreements; and the Settling Parties having consented to the entry of this Order,

IT IS HEREBY ORDERED that:

1. The Stipulation is hereby preliminarily approved and the Court adopts and incorporates the definitions in the Stipulation for purposes of this Order.

2. For purposes of this Settlement only, the claims asserted in this action will be maintained, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, as a class action by the named Plaintiffs as class representatives on behalf of class (the "Class") defined as:

all persons and entities who were (i) original purchasers of hotel interests in the Registry Hotel at Pelican Bay, Naples, Florida, at the October 31, 1986 closing, and (ii) their direct or indirect successors or assigns who are current Unit Owners (other than Trustbank Federal Savings Bank, its affiliates, successors and assigns) and,

who do not exclude themselves from the Class.

3. The Court determines, for purposes of this Settlement only, that (a) the Class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the Class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and (d) the representative parties will fairly and adequately protect the interests of the Class, in satisfaction of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, in satisfaction of the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

4. For purposes of this Settlement only, the named Plaintiffs in the Class Action shall serve as representatives of the Class.

5. A hearing (the "Settlement Hearing") shall be held on April 30, 1992 at 9:00 a.m. before this Court in the United States District Court for the Eastern District of Michigan, Southern Division in Detroit, Michigan:

(a) to determine whether the proposed Settlement, on the terms and conditions provided in the Stipulation, should be approved as fair, reasonable and adequate to the members of the Class;

(b) to determine whether a Final Judgment and Order as described in paragraph 11 hereof should be entered.

6. On or before February 14, 1992, Counsel for the Class shall cause a Notice of Proposed Settlement and Conditional Class Action Certification (the "Notice"), to be given to members of the Class. A copy

of the Notice, substantially in the form annexed as Exhibit "C" to the Stipulation, shall be mailed by first class mail, postage prepaid, to all those persons and entities who are members of the Class. Counsel for the Class is specifically authorized to eliminate duplicate names from any list that is prepared so that persons do not receive multiple copies of the Settlement Notice Prior to the Settlement Hearing provided for in paragraph 5 of this Order, Counsel for the Class shall file proof, by affidavit, of such mailing.

7. The Court approves the form of the Notice and finds that the mailing and distribution of such Notice substantially in the manner and form set forth in paragraph 6 of this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

8. Any member of the Class may appear at the Settlement Hearing to show cause why the proposed Settlement should or should not be approved as fair, reasonable and adequate as to the Class, or why a judgment should or should not be entered thereon as to the Class; provided, however, that no member of the Class shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement or the judgment to be entered pursuant thereto approving the same, unless on or before April 3, 1992 that person has served by hand or by first class mail written objections and copies of any supporting papers and briefs upon:

ELWOOD S. SIMON & ASSOCIATES, P.C.
Elwood S. Simon
1533 N. Woodward Avenue, Suite 315
Bloomfield Hills, Michigan 48304
(313) 646-9730
Attorneys for Plaintiffs

BUTZEL LONG
Douglas G. Graham
Dennis K. Egan
150 W. Jefferson, Suite 900

Detroit, Michigan 48226
(313) 225-7000
Attorneys for Merrill Lynch Defendants

COSGROVE, FLYNN, GASKINS & HASKELL
Steve Gaskins
333 S. 7th Street
2900 Lincoln Center
Minneapolis, Minnesota 55402
(612) 332-4373
Attorneys for the SSG Defendants

CLARK, KLEIN & BEAUMONT
Laurence M. Scoville, Jr.
Jonathan T. Walton, Jr.
1600 First Federal Building
Detroit, Michigan 48226
(313) 965-8411
Attorneys for the Trustbank Defendants

and has filed said objections, papers and briefs showing due proof of service upon all of said counsel with the Clerk of the United States District Court for the Eastern District of Michigan, Southern Division, in Detroit, Michigan.

9. Any member of the Class who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement.

10. Pending the Court's determination of whether the Settlement should be finally approved, the Class Plaintiffs and each member of the Class, whether or not such person has appeared in the Action, shall not, upon receipt of Notice, institute or further prosecute any action or proceeding asserting any claims that are part of the Action against any Defendant, unless such person requests exclusion from the Action pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure on or before March 9, 1992.

11. If the Settlement is approved by the Court, a Final Judgment and Order shall be entered:

 (a) Approving the Settlement set forth in the Stipulation as fair, reasonable and adequate as to the Class, directing its consummation, and directing

that all parties hereto, including all Class Members, perform in accordance with the terms of the Stipulation.

(b) Identifying the persons who have duly and timely elected to opt out, providing that said persons shall be excluded from the Class for purposes of the Settlement and from any benefits under the Stipulation.

(c) Ordering the Class Plaintiffs, Counsel for the Class, and Counsel for all other Settling Parties to take all action required to comply with their obligations under the Stipulation, including, without limitation, performing all covenants and agreements set forth in the Stipulation, and that they execute and deliver such other and further documents and papers as the Court, on its motion or at the request of any party to the Stipulation, may deem appropriate to effectuate the Stipulation, and providing that any person benefitted by any of said obligations shall have standing to apply to the Court for an order enforcing said obligations.

(d) Dismissing the Class Action with prejudice and without costs, with respect to the Settling Defendants and without prejudice as to Defendants, Winsor/Faricy Architects, Inc. and Midwest Title Guarantee Company of Florida.

(e) Stating that each Settling Party shall be deemed to have been released, remised, and forever discharged from any and all claims, demands, causes of action and liabilities in the manner set forth in the Stipulation.

(f) Reserving jurisdiction over all matters related to the administration and consummation of the terms of the Settlement, including implementation of the Settlement; hearing and determination of any application for an award of attorneys' fees, incentive fees and reimbursement of expenses that may be made by Plaintiffs' Counsel; and enforcement of the Stipulation.

12. In the event the proposed Settlement as provided in the Stipulation is not approved by the Court or is terminated pursuant to the terms of the Stipulation, or for any reason the parties fail to obtain a final judgment substantially as set forth in the preceding paragraph, or such final judgment fails to become a Final Order as provided for in the Stipulation, then the Stipulation shall become null and void and of no further force and effect, and shall not be used or referred to for any purpose whatsoever. In such event, the Stipulation and all negotiations and proceedings relating thereto shall be withdrawn without prejudice as to the rights of any and all parties thereto, who shall be restored to their respective positions existing as of the date of the Stipulation.

/s/ John Feikens
JOHN FEIKENS
United States District Judge

Approved as to form and substance and waiver of notice of entry:

ELWOOD S. SIMON & ASSOCIATES, P.C.

By: /s/ Elwood S. Simon
 Elwood S. Simon

1533 N. Woodward Avenue

Suite 315

Bloomfield Hills, MI 48304

(313) 646–9730

Attorneys for Plaintiffs

CLARK, KLEIN & BEAUMONT

By: /s/ Jonathan T. Walton, Jr.
 Laurence M. Scoville, Jr.
 Jonathan T. Walton, Jr.

1600 First Federal Bldg.

Detroit, MI 48226

(313) 965–8411

Attorneys for the Trustbank

Defendants

QUARLES & BRADY

By: /s/ Susan LaCava/F. Joseph McMackin, III
 F. Joseph McMackin, III
 Susan LaCava

411 East Wisconsin Avenue

Milwaukee, WI 53202–4497

(414) 277–5591

Attorneys for the AUO

COSGROVE, FLYNN, GASKINS & HAS-KELL

By: _____

 Steve Gaskins

333 S. 7th Street

2900 Lincoln Center

Minneapolis, MN 55402

(612) 332–4373

Attorneys for the SSG

Defendants

BUTZEL LONG

By: /s/ Dennis K. Egan

 Douglas G. Graham

 Dennis K. Egan

150 W. Jefferson, Suite 900

Detroit, Michigan 48226

(313) 225–7000

Attorneys for the

Merrill Lynch Defendants

### APPENDIX 2

(does not include exhibits)

Hon. JOHN FEIKENS

Filed Feb. 14, 1992

STIPULATION OF SETTLEMENT

## TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | THE PARTIES ........... | 1280 |
| II. | ALLOCATION OF SETTLEMENT BENEFITS .. | 1281 |
| III. | THE CLASS AND AUO .. | 1281 |
| IV. | THE SSG DEFENDANTS | 1281 |
| V. | THE MERRILL LYNCH DEFENDANTS ......... | 1284 |
| VI. | THE TRUSTBANK DEFENDANTS ............ | 1285 |
| VII. | CASH SETTLEMENT WITH NON–INDEBTED CLASS MEMBERS WHO ARE CURRENT UNIT OWNERS .............. | 1288 |
| VIII. | CASH SETTLEMENT WITH CLASS MEMBERS WHO ARE FORMER UNIT OWNERS ........ | 1288 |
| IX. | FURTHER UNIT OWNER DISTRIBUTIONS ....... | 1288 |
| X. | MISCELLANEOUS........ | 1288 |

## STIPULATION OF SETTLEMENT

The Plaintiff class to this action (the "Action"), certain Defendants and certain third parties, by their respective attorneys, have reached a stipulation of settlement (the "Settlement") of the Action and other claims on the terms and subject to the conditions set forth below.

I. THE PARTIES. The parties to the Settlement are the following:

A. The Class: All members of the provisional settlement class (the "Class") which, for purposes of this Settlement only, shall be certified as follows:

All persons and entities (the "Unit Owners") who were (i) original purchasers of hotel interests in the Registry Hotel at Pelican Bay, Naples, Florida (the "Registry Hotel") at the October 31, 1986 closing, and (ii) their direct or indirect successors or assigns who are current Unit Owners (other than Trustbank Federal Savings Bank and its affiliates, successors and assigns), and

who do not exclude themselves from the Class. The Settlement covers all claims by and against all Defendants included or includible in the Action, except claims by and against M.A. Mortenson Company ("Mortenson"). In the event the Settlement is not approved, or is otherwise not consummated, the conditional certification is void and the Action will proceed as if there had been no certification of a provisional settlement class.

B. The Association of Unit Owners of the Registry Hotel at Pelican Bay, Inc. (the "AUO").

C. Shelter Seagate Corporation ("SSG"), together with Can–American Corporation, Can–American Realty Corporation, Shelter Seagate Associates, Ltd., Shelter Seagate Holders Corporation, Graham C. Lount, Garrett G. Carlson and Arni Thorsteinson (collectively referred to as the "SSG Defendants").

D. Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") together with Martin Cicco and Francis Lavin (collectively referred to as the "Merrill Lynch Defendants").

E. Trustbank Federal Savings Bank ("Trustbank Federal"), together with Trustbank Savings F.S.B. ("Trustbank Savings"), and Trustbank Mortgage Center Inc. f/k/a Dominion Financial & Investment Corp. ("Trustbank Mortgage Center"), and their successors and/or assigns (collectively referred to as the "Trustbank Defendants").

II. ALLOCATION OF SETTLEMENT BENEFITS. The cash payments discussed below in Sections IV(A), V(A), VI(A), VII and VIII from SSG, Merrill Lynch and the Trustbank Defendants to the Class, and the loan principal reductions and other loan modifications that Trustbank Federal and/or the Trustbank Defendants grant hereunder, shall be allocated so that (a) all members of the Class who are current Unit Owners receive a relatively equivalent financial benefit from the Settlement (either in the form of cash or a loan principal reduction and other loan modifications) based on the type of unit originally purchased and (b) all members of the Class who were original purchasers on October 31, 1986, who subsequently (but prior to February 7, 1992) transferred their respective hotel interest to a non-related, non-affiliated third party in a bona fide sales transaction which resulted in a return to them of less than their original down payment, who have not reacquired or are not the grantees of a reconveyance of such hotel interest, and who have not elected to be excluded from the Class, receive a proportionate benefit from the Settlement in the form of cash.

III. THE CLASS AND AUO. Upon Final Court Approval of the Settlement, as defined herein, the Class and the AUO agree to the following:

A. The Class and the AUO shall release and forever discharge all claims, including all claims included or includible in the Action, causes of action, rights and offsets of every kind and nature, known or unknown, accrued or unaccrued, arising out of or in connection with the offer, sale, purchase, financing, ownership and operation of the Registry Hotel, any contract associated therewith, and/or the instant litigation relating to the Registry Hotel or any interest thereon, except as specifically provided herein, against (1) the SSG Defendants, the Merrill Lynch Defendants, the Trustbank Defendants, the Resolution Trust Corporation ("RTC"); and (2) all of their parents, subsidiaries, affiliates, successors and assigns and their past and present officers, agents, attorneys, accountants, employees, directors, and shareholders, and the individual defendants' heirs, personal representatives, successors and assigns, except as specifically provided herein.

B. The Class and the AUO shall assign, without recourse, all rights, claims or causes of action they may have against Winsor/Faricy Architects Inc. and Midwest Title Guarantee Company of Florida to SSG and Merrill Lynch, jointly and severally. Such claims shall not be discharged or released by the Settlement.

C. The Class, and each individual member thereof, shall release each current member of the Board of Directors of the AUO from all claims, causes of action and rights they may have against each current member of the Board of Directors of the AUO arising out of or in connection with their ownership and the operation of the Registry Hotel, and/or the instant litigation relating to the Registry Hotel, or any interest therein.

IV. THE SSG DEFENDANTS. Upon Initial Court Approval of the Settlement, as defined herein, the SSG Defendants agree to the following:

A. SSG shall pay to the Class the sum of Two Million Three Hundred Fifty Thousand Dollars ($2,350,000), cash. This sum shall be placed in an interest-bearing escrow account with a bank escrow agent designated by Class counsel and approved by the SSG Defendants' counsel upon the later of:

1. March 15, 1992; or

2. five days after the occurrence of both:
 (a) RTC approval; and
 (b) Initial Court Approval;

provided, however, that in the event RTC approval and Initial Court Approval occur prior to March 15, 1992, the aforementioned sum to be paid into escrow by SSG shall begin to accrue interest at a per annum rate equal to the "New York Prime Rate" from five days after the date of Initial Court Approval to the date that said sum, plus accrued interest, is so paid; and further provided, that in the event the aforementioned sum to be paid into escrow is so paid on the fifth business day following Initial Court Approval, no such interest shall accrue. In the event SSG defaults on its payment of Two Million Three Hundred Fifty Thousand Dollars ($2,350,000) as required hereunder, SSG shall pay interest on said sum from the date of such default until said sum is paid at the per annum rate equal to five (5%) percent above New York Prime Rate. For purposes hereof, "New York Prime Rate" shall mean (the higher of) that rate announced by Citicorp, N.A. and/or Chase Manhattan Bank, N.A., as being the best rate then being charged by said bank(s) for unsecured loans of 90 day maturity to their respective best, most credit-worthy borrowers.

B. The SSG Defendants shall resign from and/or terminate any and all of their positions as agent and/or manager on behalf of the Unit Owners and/or the AUO, or otherwise, and all such Agency, Management and/or other agreements between the SSG Defendants and the Unit Owners and/or the AUO, directly and/or indirectly, shall be terminated, effective five (5) days after Final Court Approval of the Settlement. SSG, Can–American Corporation, Can–American Realty Corporation, Shelter Seagate Associates, Ltd., Shelter Seagate Holders Corporation and each of their respective corporate affiliates shall agree, effective upon Final Court Approval of the Settlement, to relinquish any direct and/or indirect proprietary interest (if any) in the Registry Hotel, and further, to relinquish any direct and/or indirect right to receive compensation from the ownership and/or operation of the Registry Hotel, the AUO and/or the Unit Owners; provided, however, that the foregoing shall not apply to the rights held by any of the SSG Defendants or their affiliates solely as unit owners in the Registry Hotel.

C. Shelter Seagate Associates, Ltd. shall be in good standing in the State of Florida and shall convey, by Warranty Deed, its residual interest in the Registry Hotel, as reserved in its deed to SSG dated February 12, 1985 (recorded February 15, 1985), to an entity to be designated by Plaintiffs' counsel that will be beneficially owned by the Class and/or Plaintiffs' counsel to the extent that any such beneficial interest shall be awarded by the Court as attorney fees; provided, however, that the covenants of quiet possession, freedom from all encumbrances, and the undertaking to defend title, shall be limited to the acts (and/or omissions) of grantor and/or its parents, subsidiaries and/or affiliates.

D. Shelter Seagate Holders Corporation shall be in good standing and negotiate, transfer and convey its capital stock to an entity designated by Plaintiffs' counsel. Any of the SSG Defendants who were or are officers and/or directors of Shelter Seagate Holders Corporation shall have no liability solely with respect to the Corporation's failure to file annual and/or other reports with, and/or pay any fees to, relevant Florida government authorities in order to maintain in good standing any limited partnership for which Shelter Seagate Holders Corporation is a general partner. If state law or applicable partnership agreements shall require consent to such negotiation, transfer and/or conveyance by members of the Class, inclusion in the Class shall constitute consent to same. In addition, the SSG Defendants shall deliver to the entity designated by Plaintiffs' counsel to whom negotiation transfer and/or conveyance has been made pursuant to the above provisions, the corporate record book, the corporate stock book, the limited partnership agreements to which Shelter Seagate Holders Corporation is a party as general partner, and all tax returns made

with the United States Government and/or any and all of the state governments. Thereafter, if there are materials pertaining to Shelter Seagate Holders Corporation held by the SSG Defendants and/or their counsel and/or present counsel to Shelter Seagate Holders Corporation, and requested for some reasonable purpose by the above referenced entity and/or its successors or assigns, then, in that event, the SSG Defendants and/or present legal counsel to Shelter Seagate Holders Corporation, shall deliver to such requesting party all such documents; provided, however, that the SSG Defendants and/or present counsel to Shelter Seagate Holders Corporation shall have the right to make copies thereof and retain said copies for their own purposes, at their sole expense.

E. The right to pursue any rights, claims or causes of action by the SSG Defendants against Mortenson and/or any subcontractors who participated in the construction of the Registry Hotel concerning construction defects or problems addressed by SSG, at its expense, shall be retained by SSG. All other rights, claims or causes of action against Mortenson and/or the subcontractors relating to construction, furnishing and/or repair of the Registry Hotel shall be assigned by the SSG Defendants to the AUO within five days after Final Court Approval, except as provided herein. Within five days after entry of Preliminary Approval of this Settlement by the United States District Court, as defined herein, the SSG Defendants shall disclose to the AUO, in writing, the existence (and underlying particulars and details) of all claims, legal actions or arbitration proceedings which the SSG Defendants and/or SSG, on behalf of the AUO, have brought, made (in writing) or currently intend to make against Mortenson and/or the subcontractors referenced above; provided, however, that such disclosure by the SSG Defendants of written claims (for monetary damages, set-offs, repair and/or replacement of work performed, contract price reductions and/or modifications), but not legal actions or arbitration proceedings (which are not subject to this proviso), brought, made or threat-

ened prior to February 7, 1992, may be effected by turning over to the AUO:

(i) possession of approximately five (5) "Bankers Boxes" of documentation assembled by SSG and related to such claims;

(ii) a written list of all third party consultants who were consulted by the SSG Defendants, individually or on behalf of the AUO, to review matters relating to the physical design, construction and/or repair of the Registry Hotel (or any portion thereof);

(iii) possession of all written reports of such consultants; and

(iv) written direction from, and written consent of, the SSG Defendants to all such consultants to make full disclosure (without cost to the SSG Defendants) of all information and/or conclusions of such consultants.

Such disclosure shall be made to the best of the SSG Defendants' information and belief, after reasonable inquiry. Pending Final Court Approval of Settlement, SSG will maintain all such documents.

The SSG Defendants further agree to disclose, in writing, to the AUO any future claim, legal action or arbitration proceeding against Mortenson and/or said subcontractors prior to or contemporaneously with the subsequent institution of each claim, legal action or proceeding. The AUO similarly agrees to disclose, in writing and within five (5) days after entry of Preliminary Approval of this Settlement, to SSG all claims, legal actions or arbitration proceedings which the AUO (or anyone, other than the SSG Defendants, acting on its behalf) has brought, made (in writing) or currently intends to make against Mortenson and/or the subcontractors referenced above. The AUO shall further disclose, in writing, to SSG any future claim, legal action or arbitration proceeding against Mortenson and/or said subcontractors prior to or contemporaneously with the subsequent institution of such claim, legal action or arbitration proceeding. In the event the AUO and SSG Defendants cannot agree on which rights, claims or causes of action have been assigned, or in the event the AUO and the

SSG Defendants both have rights, claims or causes of action against Mortenson and/or the subcontractors, and the AUO and the SSG Defendants cannot agree on the priority and/or scope thereof, the matter will be resolved by binding arbitration through the American Arbitration Association in Naples, Florida; provided, however, that with respect to any claims involving Astron Mechanical, the AUO shall be entitled to join in the arbitration proceeding currently pending before the American Arbitration Association in Minneapolis, Minnesota between SSG and Astron Mechanical to resolve all such matters related thereto in that forum.

F. The SSG Defendants, their parents, subsidiaries, affiliates, successors and assigns, past and present officers, agents, attorneys, accountants, employees, directors, shareholders, and the individual defendants' heirs, personal representatives, successors and assigns, shall release and forever discharge the members of the Class, the AUO (itself) and each current member of the Board of Directors of the AUO from all claims, including all claims included or includible in the Action, causes of action, rights and offsets of every kind and nature, known and unknown, accrued or unaccrued that they may have against the Class, the AUO and/or each current member of the Board of Directors of the AUO arising out of or in connection with the offer, sale, purchase, financing, ownership and operation of the Registry Hotel, any contract associated therewith to the extent associated therewith, and/or the instant litigation relating to the Registry Hotel or any interest therein, except as specifically provided herein; provided, however, that each of the current members of the Board of Directors of the AUO shall not be entitled to such release unless a reciprocal release of all claims, causes of action and rights each said Director may have, solely as a Director of the AUO, against the SSG Defendants, their parents, subsidiaries, affiliates, successors and assigns, past and present officers, agents, attorneys, accountant, employees, directors, shareholders, and the individual defendants' heirs, personal representatives, successors and assigns is executed and available for delivery to the SSG Defendants in exchange for their reciprocal release. For purposes hereof, the scope of the SSG Defendants' release shall include, but not be limited to, the AUO Management Contract, funds advanced to the AUO, as well as fees and expenses (which fees and expenses are claimed to have been) expended, incurred and/or accrued in connection with the construction, operation and/or past, present and/or future litigation related to the Registry Hotel to the extent said litigation relates to acts and events existing prior to the date of this Stipulation of Settlement. From and after the date hereof, the SSG Defendants shall not be required to incur expenses on behalf of the AUO; provided, however, that in the event the SSG Defendants do incur expenses on behalf of the AUO, they shall not be entitled to reimbursement for such expenses unless the SSG Defendants shall have first received the prior written consent of the AUO to incur such expenses.

G. Upon Final Court Approval of this Settlement, the SSG Defendants shall stipulate and agree to dismiss with prejudice (and/or shall not oppose any such motion to dismiss) the action to compel arbitration pending in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 90–1897–CA–01–HDH, as well as the Third–Party Complaint Against the AUO Board of Directors, filed in the Interpleader Action pending in the United States District Court for the Eastern District of Michigan, Southern Division, Case No. 90–CV–73440–DT.

V. THE MERRILL LYNCH DEFENDANTS. Upon Initial Court Approval of the Settlement, the Merrill Lynch Defendants agree to the following:

A. Merrill Lynch shall pay to the Class the sum of Three Million Dollars ($3,000,-000), cash. This sum shall be placed in an interest-bearing escrow account with a bank escrow agent designated by Class counsel and approved by the Merrill Lynch Defendants' counsel upon the later of:

1. March 15, 1992; or

2. five days after the occurrence of both:

(a) RTC approval; and

(b) Initial Court Approval;

provided, however, that in the event RTC approval and Initial Court Approval occur prior to March 15, 1992, the aforementioned sum to be paid into escrow by Merrill Lynch shall begin to accrue interest at the per annum rate equal to the "New York Prime Rate" from five days after the date of Initial Court Approval to the date that said sum, plus accrued interest, is so paid; and further provided, that in the event the aforementioned sum to be paid into escrow is so paid on the fifth business day following Initial Court Approval, no such interest shall accrue. In the event Merrill Lynch defaults on its payment of Three Million Dollars ($3,000,000) as required hereunder, Merrill Lynch shall pay interest on said sum from the date of such default until said sum is paid at the per annum rate equal to New York Prime Rate. For purposes hereof, "New York Prime Rate" shall mean (the higher of) that rate announced by Citicorp, N.A. and/or Chase Manhattan Bank, N.A., as being the best rate then being charged by said bank(s) for unsecured loans of 90 day maturity to their respective best, most credit-worthy borrowers.

B. Upon Final Court Approval of the Settlement, The Merrill Lynch Defendants and their parents, subsidiaries, affiliates, successors and assigns, past and present officers, agents, attorneys, accountants, employees, directors, and shareholders, and the individual defendants' heirs, personal representatives, successors and assigns shall release and forever discharge the members of the Class and the AUO from all claims, including all claims included or includible in the Action, causes of action, rights and offsets of every kind and nature, known and unknown, accrued or unaccrued, that they may have against the Class and the AUO arising out of or in connection with the offer, sale, purchase, financing, ownership and operation of the Registry Hotel, any contract associated therewith to the extent associated therewith, and/or the instant litigation relating to the Registry Hotel or any interest therein, except as specifically provided herein.

C. Any matters between Merrill Lynch Business Financial Services, Inc. and the AUO shall not be affected by the Settlement, including releases contained herein.

VI. THE TRUSTBANK DEFENDANTS. Upon Final Court Approval of the Settlement, the Trustbank Defendants agree to the following:

A. The Trustbank Defendants shall pay to the Class the sum of One Hundred Ten Thousand Four Hundred Three & 12/100 Dollars ($110,403.12), cash. This sum shall be placed in an interest-bearing escrow account with a bank escrow agent designated by Class counsel and approved by the Trustbank Defendants' counsel upon the later of:

1. March 15, 1992; or

2. five days after the occurrence of both:

(a) RTC approval; and

(b) Initial Court Approval;

provided, however, that in the event RTC approval and Initial Court Approval occur prior to March 15, 1992, the aforementioned sum to be paid into escrow by the Trustbank Defendants shall begin to accrue interest at a per annum rate equal to the "New York Prime Rate" from five days after the date of Initial Court Approval to the date that said sum, plus accrued interest, is so paid; and further provided, that in the event the aforementioned sum to be paid into escrow is so paid on the fifth business day following Initial Court Approval, no such interest shall accrue. In the event the Trustbank Defendants default on their payment of One Hundred Ten Thousand Four Hundred Three & 12/100 Dollars ($110,403.12) as required hereunder, the Trustbank Defendants shall pay interest on said sum from the date of such default until said sum is paid at the per annum rate equal to five (5%) percent above New York Prime Rate. For purposes hereof, "New York Prime Rate" shall mean (the higher of) that rate announced by Citicorp, N.A. and/or Chase

Manhattan Bank, N.A., as being the best rate then being charged by said bank(s) for unsecured loans of 90 day maturity to their respective best, most credit-worthy borrowers.

B. As provided herein, Trustbank Federal shall modify the mortgage loans of members of the Class who (directly or indirectly) have outstanding or foreclosed mortgage loans (secured by mortgages on units at the Registry Hotel) with Trustbank Federal as of February 7, 1992 ("Indebted Class Members") and identified in a list attached hereto, made a part hereof and labelled Exhibit "A". The modification of each such loan shall be confirmed in a modification allonge to be executed by Trustbank Federal and attached to the mortgage note of each Indebted Class Member, which shall provide, in substance, as follows:

1) All Indebted Class Members whose loans are in good standing as of the first day of the month following the month of Final Court Approval of the Settlement (the "Effective Date") shall receive, effective as of that date, a reduction in their principal balance owing equal to the Settlement Amount, as specified in Section VII hereof, for the type of unit securing the loan.

2) All Indebted Class Members whose loans are in good standing as of the Effective Date shall receive the following modifications to their loans, effective as of that date.

Loan Type: 6 month adjustable

Index: 6 month Constant Maturity Treasury Index (weekly), as available 45 days prior to adjustment payment change date, except for initial rate

Margin: 2.50%

Adjustment Rounding: Up to the nearest .125%

Adjustment Cap = + or − 1% per adjustment

Lifetime Cap: 6%

Initial Modified Rate: 6.5% (Currently as of January 24, 1992; to be set at the six (6) month Constant Maturity Treasury Index (weekly) rate as of the date 45 days prior to the date of Final Court Approval)

Amortization: Balance of 30 years, maturing October 31, 2016. Indebted Class Members whose loans currently have shorter terms may elect to retain the shorter term by informing Trustbank Federal in writing within 90 days following the Effective Date.

3) The monthly loan payments of the Indebted Class Members who are in good standing as of the Effective Date shall be adjusted to reflect modifications granted herein beginning with the next payment due after the Effective Date. For internal accounting purposes only, the individual records of Indebted Class Members not in good standing need not be so adjusted until the next payment due after the achievement of good standing; provided, however, the obligations of the Indebted Class Members and the bookkeeping responsibility of the Trustbank Defendants shall be duly and expressly noted in the books and records of the Trustbank Defendants as being subject to the substantive terms of this Settlement as of the date hereof.

4) Any Indebted Class Member whose unit has been foreclosed shall be allowed the revisions granted in this Settlement by accepting reconveyance of the unit from Trustbank Federal within 90 days after the Effective Date. Any Indebted Class Member choosing reinstatement shall pay all taxes, recording fees and other costs of the reconveyance. As a condition to reconveyance, the Indebted Class Member's project mortgage loan must be reinstated as if it had continued to exist without foreclosure, and must be brought into good standing at the time of reconveyance.

5) Indebted Class Members whose loans are not in good standing on the Effective Date shall have until 90 days following the Effective Date to bring their loans into good standing, in the absence of which, the Indebted Class Member shall no longer be entitled to the modifications granted herein.

Trustbank Federal shall waive any late charges, default interest or other penalties with respect to such loans.

6) With the exception of the foreclosed units (which are required to pay taxes, recording fees and other costs of reconveyance only), outlined in Section VI(A)(4) above, Indebted Class Members will not be required to pay any refinancing costs in connection with the modifications to their mortgage loans provided herein.

7) Indebted Class Members who, as a result of economic hardship or changed financial circumstances arising subsequent to the date of their original loan application, are not able to bring their loans current within 90 days following the Effective Date may request financial assistance or other relief from Trustbank Federal. Such request and supporting financial information must be submitted to Trustbank Federal for its consideration within 30 days following the Effective Date. In the event the Indebted Class Member demonstrates financial hardship that would prevent realization of the benefits granted hereunder, Trustbank Federal shall use its best efforts and negotiate fairly and in good faith, on a case by case basis: (i) to preclude forfeiture by the Indebted Class Member of the benefits granted hereunder or (ii) with respect to Indebted Class Members who can neither bring their loans current within the 90 day period provided hereunder nor continue to pay their loans, as modified hereunder, to grant other relief reasonable under the circumstances.

8) Any Indebted Class Member who pays off a mortgage loan between February 7, 1992 and Final Court Approval of this Settlement, as defined herein, shall not be entitled to receive the Settlement Amount with respect to the unit secured by that loan, either in the form of loan modifications or cash.

C. Except for the mortgage loan obligations referred to herein, the Trustbank Defendants, their parents, subsidiaries, affiliates, successors and assigns, past and present officers, agents, attorneys, accountants, employees, directors and shareholders shall, upon Final Court Approval of the Settlement, release and forever discharge the members of the Class and the AUO from all claims, including all claims included or includible in the Action, causes of action, rights and offsets of every kind and nature, known or unknown, accrued or unaccrued, that they may have against the Class and the AUO arising out of or in connection with the offer, sale, purchase, financing, ownership and operation of the Registry Hotel, any contract associated therewith to the extent associated therewith, and/or the instant litigation relating to the Registry Hotel or any interest therein, except as specifically provided herein.

D. The Trustbank Defendants' participation in the Settlement is contingent on approval of the Settlement by RTC and/or by the non-RTC participants in the project mortgage loans, if required. Trustbank Federal shall use its best efforts to obtain such approvals. In the event the required RTC approval is obtained, Trustbank Federal shall provide written confirmation of such approval to counsel for the Class, for the benefit of the Class. In the event RTC or participant approval is denied, Trustbank Federal shall notify the Court and counsel for all parties. Upon sending such notice, none of the parties hereto shall have obligations under the Settlement and the Settlement shall be null and void *ab initio*.

E. Trustbank Federal shall cause a blanket notice of the loan modifications granted hereunder, covering all units of the Registry Hotel, to be recorded in the real estate records for Collier County, Florida.

F. The managing agent of Trustbank Federal (appointed by the RTC in its capacity as conservator for Trustbank Federal as provided in Office of Thrift Supervision Order No. 91–45, dated January 25, 1991) exercising its authority as, and in lieu of, Trustbank Federal's Board of Directors, or its legal successors, shall approve this Settlement; such approval shall be reflected in the minutes of the Board; a copy of this

Settlement shall, from the time of its execution, be continuously maintained as an official record of Trustbank Federal; and Trustbank Federal, on behalf of itself and its successors and assigns, shall waive any defense based on 12 U.S.C. § 1823(e), the D'Oench doctrine, if applicable, and/or judicial cognizance and/or application of (any) Federal Holder in Due Course doctrine with respect to this Settlement.

### VII. CASH SETTLEMENT WITH NON–INDEBTED CLASS MEMBERS WHO ARE CURRENT UNIT OWNERS.

Upon Final Court Approval of the Settlement, all members of the Class who are current Unit Owners, other than Indebted Class Members, shall be paid a cash distribution for each unit owned from the escrowed settlement funds, equal to the amounts listed below (the "Settlement Amount"), to wit:

| | | |
|---|---|---|
| Studio Unit | — | $20,668.39 |
| Tennis Cabana | — | $24,906.75 |
| Suite | — | $28,352.89 |
| Deluxe Suite | — | $32,041.08 |

### VIII. CASH SETTLEMENT WITH CLASS MEMBERS WHO ARE FORMER UNIT OWNERS.

A. Upon Final Court Approval of the Settlement, all members of the Class identified in the list attached hereto, made a part hereof and labelled Exhibit "B", who were original purchasers on October 31, 1986, who subsequently (but prior to February 7, 1992) transferred their respective hotel interest to a non-related, non-affiliated third party in a bona-fide sales transaction which resulted in a return to them of less than their original down payment, who have not reacquired or are not the grantee of a reconveyance of said hotel interest and who have not elected to be excluded from the Class, shall be paid a cash distribution for each unit owned from the escrowed settlement funds, equal to the lesser of (1) their out-of-pocket loss, or (2) the following amounts, to wit:

| | | |
|---|---|---|
| Studio Unit | — | $2,298.71 |
| Tennis Cabana | — | $2,767.42 |
| Suite | — | $3,150.32 |
| Deluxe Suite | — | $3,560.12 |

provided that a written claim therefor has been submitted to Plaintiffs' counsel no later than ten (10) days prior to the hearing date set for Initial Court Approval.

B. The SSG Defendants, on behalf of Pelican Bay Funding, further waive any right Pelican Bay Funding may have to make a claim to any of the benefits provided in this Settlement with respect to any unit which Pelican Bay Funding formerly owned and subsequently reconveyed to an original purchaser or any other party.

### IX. FURTHER DISTRIBUTION TO CURRENT UNIT OWNERS.

A. Upon Final Court Approval of the Settlement, all distributions from the Registry Hotel which are presently held in escrow by the United States District Court in a separate and distinct Interpleader action pending in the United States District Court for the Eastern District of Michigan, Southern Division, being Case No. 90–CV–73440–DT, shall be distributed out of escrow to the current Unit Owners who are members of the Class, or their assigns (including, but not limited to, Trustbank Federal), as the case may be, free and clear of the interpleader claims of the parties thereto.

B. Upon Final Court Approval of the Settlement, all Unit Owner distributions held in escrow by the Law Firm of Quarles & Brady and/or Midwest Title Guarantee Company of Florida, Inc. on behalf of Indebted Class Members who were or are in default on their mortgage obligations with the Trustbank Defendants shall be distributed out of escrow, free and clear of all claims, to all such Indebted Class Members, or their assigns (including, but not limited to, Trustbank Federal), as the case may be.

### X. MISCELLANEOUS.

A. Elwood S. Simon, Bruce E. Gerstein and Eugene A. Spector, counsel for the Class; Arthur Zaske, and not less than two of the named plaintiffs in the Action (other

than Shirley L. Horvath and Joann L. Denolf) agree to support and enthusiastically advance the Settlement. Susan LaCava and Joseph McMackin, counsel for the AUO, agree to support and enthusiastically advance the AUO aspects of the Settlement. Counsel for the SSG Defendants, the individual Defendants who are affiliated with SSG, Counsel for the Merrill Lynch Defendants, the Merrill Lynch Defendants themselves and Counsel for the Trustbank Defendants agree to support and enthusiastically advance the Settlement.

B. The parties to the Settlement shall submit to the Trial Court for approval the form of notice to the Class attached hereto, made a part hereof and labelled Exhibit "C".

C. Potential Class members will be given 21 days from the date of the notice to exclude themselves from the Class. Counsel for the SSG Defendants, the Merrill Lynch Defendants and the Trustbank Defendants will be provided access to copies of the executed exclusion forms received by counsel for the Class as they are received.

D. "Preliminary Court Approval" occurs at such time as the Court accepts the executed Stipulation of Settlement, gives its preliminary approval to the terms of the Settlement and approves the form of notice to be sent to the Class.

E. "Initial Court Approval of the Settlement" occurs at such time after (i) Preliminary Court Approval, (ii) notice, (iii) the RTC approves the Settlement, (iv) expiration of the exclusion period, and (v) a hearing, when a final order, without regard to any appeals, approving the Settlement is entered by the District Court.

F. "Final Court Approval of the Settlement" occurs at such time after Initial Court Approval of the Settlement and after (i) the time has expired in which to seek review or appeal thereof without any such review or appeal having been taken, or (ii) if such review or appeal is taken, such review or appeal shall have been finally determined (subject to no right of further review or appeal) by the highest court before which such review or appeal is sought and allowed, in such a manner as to permit the implementation of the Settlement in accordance with all of its terms and provisions.

G. The parties to the Settlement will present this Stipulation of Settlement to the Court for Preliminary Court Approval prior to sending notice to the Class and, as soon as practicable following appropriate notice to the Class and after final approval of the Settlement by RTC, which decision shall be made within 90 days after Preliminary Court Approval, the parties to the Settlement will seek Initial Court Approval of the Settlement; upon such Initial Court Approval, the parties hereto shall stipulate to the dismissal of the Action with prejudice and without costs as to the parties to this Stipulation, and without prejudice as to claims against Defendants Winsor/Faricy Architects, Inc. and Midwest Title Guarantee Company of Florida, Inc.

H. Upon Final Court Approval of the Settlement, the parties to the Settlement shall do any and all acts and/or execute and deliver any and all documents necessary and/or convenient to fully effect the purposes and intent of the Settlement.

I. The Settlement shall, at the option of any party hereto, be null and void and of no force and effect should any conditions stated herein not be met and, in that event, this Stipulation of Settlement shall not be deemed to prejudice in any way the positions of the parties with respect to the Action. In the event the Settlement does not receive Initial or Final Court Approval, or does not occur for any reason, the escrowed funds contributed by Merrill Lynch, SSG and/or the Trustbank Defendants, together with all interest, will be returned to them immediately.

J. In their discretion, Plaintiffs' counsel may apply to this Court for an award of attorneys' fees, plus incentive fees and reimbursement of all reasonable expenses incurred by Plaintiffs' counsel. Defendants and/or their respective affiliates will take no position in connection with such application. Defendants shall have no obligation for attorneys' fees, incentive fees, expenses

or costs. Any escrowed funds not paid under Sections VIII and IX or not awarded to Plaintiffs' counsel under this subsection shall be distributed pro rata to all members of the Class who are current Unit Owners.

K. Upon Final Court Approval of the Settlement, the SSG Defendants will deliver to the AUO such documents, files, records, contracts, etc., without exception, which the SSG Defendants possess on behalf of the AUO pursuant the their claimed position(s) as Manager of the AUO and/or Agent for the Unit Owners pursuant to contracts identified in Section IV(B) above. Thereafter, if there are other documents held by the SSG Defendants and/or their legal counsel which are requested by the AUO and/or members of the Class for some reasonable purpose, then, in that event, the SSG Defendants and/or their counsel shall deliver to the AUO and/or members of the Class all such documents; provided that the SSG Defendants and/or their legal counsel shall have the right to make copies thereof and retain said copies for their own purposes, at their sole expense.

L. Upon Final Court Approval of the Settlement, counsel for the Class will return to Merrill Lynch, Faegre & Benson on behalf of the SSG Defendants and counsel for the Trustbank Defendants, respectively and at their cost, their respective set of "Bates stamped" documents copied pursuant to the discovery requests applicable to each party in this matter. All other copies of said documents will be destroyed by counsel for the Class. However, such return to Merrill Lynch, Faegre & Benson on behalf of the SSG Defendants and counsel for the Trustbank Defendants shall be subject to their undertaking to maintain such documents, in the form returned, for a period of sixty-six (66) months in order to provide free access to Class counsel, upon written request therefor, made in good faith and/or upon good cause shown.

M. In the event of any dispute or disagreement with respect to the meaning, effect, or interpretation of this Settlement, or in the event of a claimed breach of the Settlement, the parties hereto agree that such dispute will be adjudicated only in the United States District Court for the Eastern District of Michigan, Southern Division. Said Court shall retain jurisdiction for the purposes, among other things, of administering this Settlement and resolving any dispute hereunder and awarding Plaintiffs' counsel attorney fees and disbursements.

ELWOOD S. SIMON & ASSOCIATES, P.C.

By: /s/ Elwood S. Simon

Elwood S. Simon

Attorneys for Plaintiffs

CLARK, KLEIN & BEAUMONT

By: /s/ Jonathan T. Walton, Jr.

Laurence M. Scoville, Jr.

Jonathan T. Walton, Jr.

Attorneys for the Trustbank Defendants

COSGROVE, FLYNN, GASKINS & HASKELL

By: _____

Steve Gaskins

Attorneys for the SSG Defendants

BUTZEL LONG

By: /s/ Dennis K. Egan

Douglas G. Graham

Dennis K. Egan

Attorneys for the Merrill Lynch Defendants

QUARLES & BRADY

By: /s/ Susan LaCava/F. Joseph McMackin, III

F. Joseph McMackin, III

Susan LaCava

Attorneys for the AUO

Dated: February 14, 1992

## APPENDIX 3

### ORDER

WHEREAS, on March 15, 1991, this court certified a Class for purposes of a trial for breach of contract claims against the Shelter Seagate defendants, defined as follows:

All persons and Entities Who Purchased Hotel Interests pursuant to the February

1, 1984 Private Placement memorandum, and the supplements thereto, at the October 31, 1986 Closing, and/or their Successors and/or Assigns and who were allegedly damaged thereby;

and only one individual elected to be excluded from that Class;

WHEREAS, the court appointed as Class Counsel the law firms of Elwood S. Simon & Associates; Garwin, Bronzaft, Gerstein & Fisher; and Spector & Roseman;

WHEREAS, Class Counsel conducted a bench trial on the breach of contract issues against the Shelter Seagate defendants between May 7, 1991 and May 17, 1991;

WHEREAS, following said trial, Class Counsel entered into settlement negotiations with counsel for all defendants;

WHEREAS, the law firm of Quarles & Brady, which represents the Association of Unitowners ("AUO") in related litigation entitled *The Registry Hotel Corporation v. Shelter Seagate Corporation, et al.*, Case No. 90–CV–73440–DT, participated in said settlement negotiations on behalf of AUO;

WHEREAS, Class Counsel, counsel for AUO and certain defendants reached a settlement in principle of this action and the related litigation on February 14, 1992;

WHEREAS, the court preliminarily approved the proposed settlement on February 14, 1992 and conditionally certified a second Settlement Class defined as follows:

All persons and entities (the "Unit Owners") who were (i) original purchases of hotel interests in the Registry Hotel at Pelican Bay, Naples, Florida (the "Registry Hotel") at the October 31, 1986 closing, and (ii) their direct or indirect successors or assigns who are current Unit Owners (other than Trustbank Federal Savings Bank and its affiliates, successors and assigns);

WHEREAS, the Settlement Class supplements but does not supersede the first Class certified by the court on March 15, 1991, such that any persons who exclude themselves from the Settlement Class remain members of the first Class;

WHEREAS, notice of the proposed settlement was mailed to Settlement Class members on February 14, 1992, notifying them of the proposed settlement and their right to opt out of the Settlement Class on or before March 9, 1992;

WHEREAS, Attorney Thomas R. Grady, who purportedly represents approximately 57 individuals who may have elected to exclude themselves from the Settlement Class, but does not represent the Settlement Class, has sought to intervene in the settlement process by writing letters directing Class Counsel and counsel for AUO to cease communicating with said individuals;

WHEREAS, this matter was brought to the court's attention and the court determined it had jurisdiction over Attorney Thomas R. Grady inasmuch as he represents Class members in their individual capacities and, accordingly, issued an Order To Show Cause as to duties and responsibilities of attorneys for plaintiff class and individuals who represent Class members on March 12, 1992, and ordered Attorney Thomas R. Grady, in his purported capacity as attorney for certain individuals who are Class members, to appear before the court on March 19, 1992 to show cause why his demands to limit certain Class members' access to information was inappropriate;

WHEREAS, the court has previously determined and affirmed that Class Counsel and counsel for AUO are under a duty to provide accurate information to their clients, including all members of the certified Class, in order to allow them to make an informed decision concerning the proposed settlement, including effects of electing to exclude themselves from the Settlement Class;

WHEREAS, the court is concerned that Attorney Thomas R. Grady may not be communicating accurate, objective and legally sound analysis of the settlement and its ramifications to his clients; and

WHEREAS, Attorney Thomas R. Grady failed to personally appear before this court and respond to its inquiries as ordered;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Class Counsel and counsel for AUO (or such other persons as they may appoint in their discretion, including Class representatives) are hereby permitted, and have the duty, to continue communicating directly with their clients, including all members of the Class certified on March 15, 1991, concerning the proposed settlement of this action to assure that they have adequate and accurate information upon which to make an informed decision as to whether to elect to exclude themselves from the Settlement Class.

2. Both Class Counsel and the attorney who represents individuals who are Class members must impart only accurate, objective, balanced information regarding the settlement. Any statement made by any attorney suggesting that litigation can be commenced in state court by any Class member who opts out of the settlement is inappropriate inasmuch as this court has exclusive jurisdiction over this matter.

3. By stipulation the settling parties have extended the deadline for opting out of the settlement until April 14, 1992, and the date upon which Resolution Trust Company must begin its approval process for the settlement is extended until April 15, 1992.

4. This Order is sent by facsimile to counsel for the settling parties and to Attorney Thomas R. Grady. A copy of the Order, in accordance with Federal Rules, will follow by mail.

5. Attorneys for the Class are directed to transmit this Order to each member of the Class.

IT IS SO ORDERED.

/s/ John Feikens
John Feikens
United States District Judge

Dated: March 24, 1992